In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2604

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL CLARK,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:17-cr-53-JDP-1 — **James D. Peterson**, *Judge.*

ARGUED MAY 22, 2019 — DECIDED AUGUST 15, 2019

Before BAUER, HAMILTON, and SCUDDER, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant-appellant Michael
Clark was convicted of possessing a mixture containing fen-
tanyl in violation of 21 U.S.C. § 841(a)(1). Clark had been
found in a hotel room with more than 80 grams of a mixture
of heroin and fentanyl, a digital scale, and cellophane bags.
He does not appeal any aspect of his jury trial, but he chal-
lenges the denial of his motion for a *Franks* hearing challeng-
ing the issuance of the search warrant for the hotel room. He

also challenges the denial of his motion to suppress without an evidentiary hearing. And he challenges two aspects of his sentence: the guideline treatment of his conviction for drug distribution that occurred in Illinois seven months after his Wisconsin arrest and one condition of supervised release. We vacate Clark's conviction and remand for an evidentiary hearing on his *Franks* challenge. We affirm on the denial of his motion to suppress without a hearing. We also affirm on the guideline issue and determine that the supervised release challenge was waived. We address in Part I the need for a *Franks* hearing and in Part II the need for an evidentiary hearing on the motion to suppress. We address the sentencing issues in Part III.

I.  *The Need for a Franks Hearing*

The Fourth Amendment's strong preference for the use of search warrants calls for probable cause determinations by a "neutral and detached magistrate" as opposed to "officer[s] engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14 (1948). The application for a warrant "must provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

The ability of the neutral and detached magistrate to determine probable cause depends on the accuracy of the information the police submit. "[A] search warrant is not valid if the police obtain it by deliberately or recklessly presenting false, material information," or by omitting material information from the affidavit provided to the issuing judge. *United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013), citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). To invalidate a warrant on this basis, a defendant at a so-called *Franks*

hearing must prove by a preponderance of the evidence either falsity or recklessness, as well as materiality. *McMurtrey*, 704 F.3d at 509.

Merely to obtain a *Franks* hearing, however, a defendant does not need to prove the *Franks* violation. A defendant must only make a substantial preliminary showing (1) that the warrant application contained a material falsity or omission that would alter the issuing judge's probable cause determination, and (2) that the affiant included the material falsity or omitted information intentionally or with a reckless disregard for the truth. *United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014); see also, e.g., *United States v. Hancock*, 844 F.3d 702, 708 (7th Cir. 2016); *United States v. Mullins*, 803 F.3d 858, 861–62 (7th Cir. 2015); *United States v. Robinson*, 546 F.3d 884, 887–88 (7th Cir. 2008). "Proof by a preponderance of the evidence is not required until the *Franks* hearing itself." *Glover*, 755 F.3d at 820.

Clark asserted in the district court that the police investigator who applied for the search warrant of the hotel room deliberately or recklessly omitted critical information affecting the credibility of the unidentified informant who told the officer about drug distribution at the hotel where Clark was arrested. The district court denied the motion for an evidentiary hearing on the question. The court agreed that the police had provided no information about the informant's credibility. The court found, however, that the police had provided sufficient corroboration for the informant's tip so that the warrant did not depend on the informant's credibility. That meant the omitted credibility information was not material for *Franks* purposes. We disagree and find that a hearing is needed. "[W]e review the denial of a *Franks* hearing for clear

error, but any legal determinations that factored into the ruling are reviewed *de novo*." *Glover*, 755 F.3d at 815; see also *Hancock*, 844 F.3d at 707–08.

A. *The Warrant Application*

Investigator Todd Maas is a police officer in Superior, Wisconsin. He prepared the warrant application and signed the supporting affidavit. Maas said that a confidential informant contacted him on October 14, 2015 and told him that earlier that day, he had driven someone to a parking lot adjacent to the Baywalk Inn in Superior to buy heroin from a black male called "Big Mike," the brother of "Toonchie." Maas said he and another officer then performed their own investigations, including surveillance of the parking lot. Maas observed a black male leave the hotel and enter and then exit at least five cars in the hotel parking lot. He also learned that the guest staying in Room 203 was the only hotel guest who both had paid in cash and was staying only one night, all behavior that Maas said was typical of drug trafficking, based on his training and experience. Maas also said he had spoken to a woman (referred to in this case as the "mom on a mission") who said that her daughter was a heroin addict and that she (the mother) had followed a man she suspected of drug-dealing to Room 203.

Maas included all of this information in his affidavit, which convinced a state trial judge to issue a search warrant for Room 203. Maas did not include any damaging information about the credibility of his confidential informant, who was the only source of information specifically about drug trafficking. The informant was being paid for his services. He also had two pending criminal charges against him, fifteen prior convictions, and a history of opiate and cocaine

abuse, and he was hoping to receive a reduced sentence in exchange for his cooperation.

B. *Materiality*

Where an affidavit is based primarily on tips from an informant, probable cause can be shown based on the totality of the circumstances. *Gates*, 462 U.S. at 238; *Glover*, 755 F.3d at 816. In cases based on informants' tips, we have identified five factors of particular relevance: (1) the level of detail the informant provided; (2) the extent to which the informant's information is based on his or her own first-hand observations; (3) the degree to which police have corroborated the informant's information; (4) the time elapsed between the events reported and the warrant application; (5) and "whether the informant appeared or testified before the magistrate." *Glover*, 755 F.3d at 816, citing *United States v. Johnson*, 655 F.3d 594, 600 (7th Cir. 2011). Information omitted from a warrant application is material when its omission affects the probable cause determination. *Glover*, 755 F.3d at 820.

In performing this probable cause inquiry, courts must keep in mind that a search warrant for a home, business, or even hotel room can authorize highly intrusive and even destructive actions by the police, and that informants, especially in drug cases, can be unreliable and motivated by rivalries or revenge. *United States v. Lopez*, 907 F.3d 472, 478 (7th Cir. 2018), quoting *Terry v. Ohio*, 392 U.S. 1, 16–17 (1968) ("What we blandly call '*Terry* stops' can be highly intrusive." They are "not just 'a "petty indignity,"' wrote the Supreme Court, but 'a serious intrusion upon the sanctity of a person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly'"); *United States v. Bell*, 585 F.3d 1045, 1050 (7th Cir. 2009) ("For all we know, [the informant]

could have been a rival drug dealer, an angry customer, or had some other beef" with the defendant).

Our cases do not hold that a *Franks* hearing is required every time some substantial adverse information about an informant's credibility is omitted from a probable cause affidavit. *Hancock*, 844 F.3d at 709. We have said generally that where a warrant is obtained based on an informant's tip, "information about the informant's credibility or potential bias is crucial." *Glover*, 755 F.3d at 816; see, e.g., *United States v. Bradford*, 905 F.3d 497, 503–04 (7th Cir. 2018). That being said, we also have upheld warrants tainted by police omission of adverse informant credibility information. Our *Franks* hearing cases show that when police have sufficiently corroborated an informant's tip, the omission of facts pertaining to the informant's credibility may not be material.

In *United States v. Musgraves*, for example, the police omitted from the affidavit important and damaging credibility information about one informant. 831 F.3d 454, 459–60 (7th Cir. 2016). We affirmed the denial of a *Franks* hearing because a second affidavit included information from a second informant without credibility problems who had provided the police with specific and timely information about the suspect's drug trafficking to support the warrant. *Id.* at 460–61.

In *United States v. Bradford*, we also held that the affidavit's omission of facts damaging to an informant's credibility did not require suppression of evidence seized with a search warrant for drug and weapons trafficking. 905 F.3d at 503–05. In *Bradford*, the application failed to disclose that the informant had three felony convictions, was on probation, and was being paid for his help. *Id.* at 502. But his information was fresh, specific, and corroborated by his having carried out

controlled drug buys from the target and by specific information from another informant without his credibility problems. *Id.* at 504

In *United States v. Hancock*, we affirmed the denial of a *Franks* hearing in similar circumstances. 844 F.3d at 710. An informant provided fresh, detailed information about a suspect's drug sales, but the affidavit for the warrant left out information about the informant's own criminal history and the fact that he was in custody when he provided the information. *Id.* at 705–06. We found that the omissions were not material because the warrant application included extensive corroboration of the suspect's drug trafficking and intimidation of witnesses. That corroboration came from other informants, a search of a cellular telephone showing texts referring to drug deals, and from an earlier interview with the suspect himself. The quantity and quality of corroborating information meant that the omitted adverse credibility information about one informant did not require a *Franks* hearing. *Id.* at 707–10.

This case is readily distinguishable. This warrant application did not include *any* of the substantial adverse information Maas had about the informant's credibility. The government does not try to justify Maas's omissions, but it argues that the informant's credibility was not material to the warrant application because Maas and his colleague investigated and corroborated the informant's tip sufficiently to provide probable cause independent of that tip. We disagree.

The corroboration in this case was much weaker than in the cases where we upheld warrants' validity in the face of credibility omissions. This case is more akin to *Glover*, where the warrant application depended so heavily on the credibility of the informant. Here, the police had no controlled buys.

They never saw money or drugs change hands. Even the informant did not claim to have seen drugs or money change hands. If his tip did not pan out, he had plenty of deniability. He claimed only that his passenger had met with "Big Mike" outside his presence to buy heroin. And the "mom on a mission" had no track record of credibility and provided no specifics to support her suspicions of the man she had followed to Room 203. In sum, the foundation for probable cause independent of the credibility of the informant was so meager in this case that the credibility of the informant was material for *Franks* purposes.

C. *Deliberate or Reckless Omissions?*

To obtain a *Franks* hearing, Clark needed to "offer direct evidence of [Maas's] state of mind or circumstantial evidence that [Maas] had a subjective intent to deceive based on the nature of [his] omissions." *Glover*, 755 F.3d at 820. In his report and recommendation to the district court, we must note, the magistrate judge in Clark's case incorrectly read our decision in *Glover* to "mandate that … court[s] infer recklessness from the fact that an officer omitted known and substantial adverse information from a search warrant affidavit…." That is not correct. In *Glover*, we held that "credibility omissions themselves, even in the absence of more direct evidence of the officer's state of mind, provide sufficient circumstantial evidence to support a reasonable and thus *permissible* inference of reckless disregard for the truth." *Id.* (emphasis added). In other words, credibility omissions do not *require* courts to infer recklessness. Such omissions are matters for a trier of fact to weigh, just as when a witness testifies incorrectly or falsely about one or a few matters, and the trier of fact must weigh the rest of the witness's testimony.

In this case, the questions of materiality and the police af-fiant's state of mind are intertwined. To the extent that cor-roboration might have avoided the need for a *Franks* hearing in this case, the reliability of the corroboration all depended, from the issuing judge's point of view, on the same officer whose credibility is at issue: Maas omitted all adverse infor-mation he had about the credibility of the informant who pro-vided the most specific (but still second-hand) information about drug trafficking. As noted, the omission of so much im-portant information *permits* (but does not require) an infer-ence that the omissions were deliberate or reckless. If the showing of probable cause in the warrant application de-pended on the credibility of the informant, that permissible inference should be enough to obtain a *Franks* hearing.

The district court's and government's rationale for deny-ing a *Franks* hearing is that Maas's own observations supply probable cause, independent of the informant. We assume that if Maas's own observations are credited, they could lead a reasonable judge to find probable cause, though the appli-cation would have been much weaker without the inform-ant's tip to Maas. The problem is that Maas's credibility can legitimately be questioned here based on what could have been deliberate or reckless omissions of information about the credibility of the informant.

This is where materiality and intent become intertwined. If the omissions were deliberate or reckless, it would not be unreasonable to take seriously the prospect that other por-tions of the same warrant application may have been deliber-ately or recklessly false. Judges often instruct jurors that if they believe a witness has lied intentionally about a material matter, they may (but are not required to) discount the

witness's testimony on other matters. See *United States v. Weinstein*, 452 F.2d 704, 713–14 (2d Cir. 1971) (no positive rule of law excludes witness's testimony entirely based on willful falsehood, but such falsification presents issue for jury to consider in weighing rest of testimony), quoting *Knowles v. People*, 15 Mich. 408, 412 (1867); Kevin F. O'Malley, Jay E, Grenig, and William C. Lee, 1A Fed. Jury Prac. & Instr. §§ 15:01–06 (6th ed. 2019).

The same point is at the heart of the Supreme Court's jurisprudence on impeachment evidence in *Brady* cases. *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny establish that government-suppressed evidence is material "if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'" *Kyles v. Whitely*, 514 U.S. 419, 433–34 (1995), quoting *United States v. Bagley*, 473 U.S. 657, 682 (1985). Strong, non-cumulative evidence that undermines the credibility of an important government witness satisfies that definition. *Sims v. Hyatte*, 914 F.3d 1078, 1087 (7th Cir. 2019). The reason is simple. Evidence indicating that a witness whose testimony "may well be determinative of guilt or innocence" is unreliable might prompt a jury to distrust everything the witness says. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The same logic applies in this context. Maas's potentially intentional or reckless omission compromises his credibility, which determines whether probable cause for the warrant existed or not.

To be clear, we are not saying or finding here that Maas was in fact deliberately or recklessly deceptive. The issue on appeal is only whether Clark was entitled to a hearing, one where Maas's credibility could be addressed with evidence from both sides. The informant was the only source of

information (and again, that was only second-hand) who said the person in Room 203 was actually dealing drugs. All of the other information in the warrant application indicated grounds for suspicion, but we can assume that Maas had a good reason for including the informant's more specific information. The complete omission of the available damaging information about the informant's credibility permits an inference that Maas was not being honest and careful with the issuing court. Whether he in fact was honest and careful about the facts is an appropriate subject for the *Franks* hearing on remand.[1]

II.  *The Timing of the Warrant and Search*

Defendant Clark was in Room 203 when police executed the warrant. Also in the room were cellophane bags, a digital scale, and approximately 82 grams of a mixture of heroin and fentanyl. The police photographed the hotel room during their search. In a photograph of suspected drugs on a nightstand, a digital clock is visible, reading 8:15 p.m. If the clock was correct, the search was executed at least 25 minutes before the judge issued the warrant.

---

[1] Maas's application also did not explain why the informant would know heroin if he saw it. See *United States v. Peck*, 317 F.3d 754, 756–57 (7th Cir. 2003) (no probable cause for search warrant where affidavit was based on informant's report of seeing drugs in defendant's house, but according to affidavit, informant failed to give details about specific location and amount of drugs, or any explanation as to how informant knew that what she saw were controlled substances). Nor did Maas provide the kind of detail about his own training and experience that is needed to justify reliance upon them. See generally, e.g., *United States v. Scott*, 901 F.3d 842, 845 (7th Cir. 2018) ("Details … are vital when an officer proposes his own training and experience as the basis of a warrant").

The police of course are not permitted to rely on a search warrant that has not yet been approved by a judge. The district court denied Clark's motion to suppress without a hearing. The issue here is whether the photograph of the clock was sufficient evidence for Clark to have an evidentiary hearing on his motion to suppress.

A defendant who requests a suppression hearing must present "definite, specific, detailed, and nonconjectural facts … demonstrat[ing] that there is a disputed material issue of fact." *United States v. Rodriguez*, 69 F.3d 136, 141 (7th Cir. 1995); see *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011). "Reliance on vague, conclusory allegations is insufficient." *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992).

In response to Clark's motion to suppress, the government submitted the "metadata" from the digital camera. The metadata showed a host of data about each photograph, including the time each was taken. The metadata showed that all of the search photographs were taken between 10:36 and 10:52 p.m., well after the judge issued the search warrant. Clark responded in turn not with an affidavit from any witness to the search but with results of Google searches about how to edit metadata for photographs. In light of the metadata, and in the absence of any specific indications that data had been altered, the district court decided that there was no need for a hearing and denied Clark's motion to suppress.

The situation here is similar to *United States v. Woods*, 995 F.2d 713 (7th Cir. 1993).[2] In *Woods*, the police conducted a

---

[2] Another portion of the *Woods* opinion was abrogated by the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995), as we noted in *United States v. Monroe*, 73 F.3d 129, 133 (7th Cir. 1995).

search on February 12th. The problem was that both the warrant and the supporting affidavit bore handwritten dates of February 14th, though both were also date-stamped February 11th. The defendant moved to suppress, arguing that the search had been executed two days before the warrant was issued. The government responded with an affidavit from a prosecutor testifying that the application and warrant were both prepared and signed on February 11th and that the February 14th dates were mistakes. Using language associated with civil motions for summary judgment—"disputed issues of material fact" and "genuine factual dispute"—we affirmed the district court's decision to deny the motion to suppress without a hearing. Because the defendant had failed to respond to the government's explanation, we agreed that he had failed to show a genuine factual dispute and a need for an evidentiary hearing. *Id*. at 715–16.

One might argue that in *Woods* the government submitted an affidavit to explain the discrepancy, while the government here submitted letters and copies of documents, without any affidavits. Both parties here submitted various documents to the district court with this less formal approach. But the burden is on the defendant to support his motion to suppress. Missing from this record is an assertion by any witness—defendant Clark or anyone else—to the effect that the search actually occurred at 8:15 p.m. and that the clock was correct. Without such an assertion, whether in an affidavit or otherwise (given the less formal procedures being used in the district court), the Google search results about how to alter metadata merely invite speculation. The district court did not err by denying the motion to suppress, to the extent it was based on the photograph of the clock, without a hearing.

III. *Sentencing Issues*

    A. *Relevant Conduct Under the Guidelines*

Clark also challenges two aspects of his sentence. The first is a Sentencing Guidelines issue concerning the scope of his relevant conduct and criminal history, which are two sides of the same coin here. The U.S. Probation Office prepared a Pre-Sentence Report for Clark. Pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(8) of the 2016 Sentencing Guidelines Manual, the PSR calculated Clark's base offense level as 24 because he possessed between 40 and 160 grams of a substance containing fentanyl. No other adjustments applied, so his total offense level remained 24. The PSR also determined that Clark had 11 criminal history points and was in criminal history category V. Three of those 11 points were from a 2017 federal conviction for drug distribution stemming from events that occurred in Illinois after Clark was arrested in this Wisconsin federal case. Clark also received three points for a prior felony drug conviction in Minnesota. Because of the Minnesota conviction, Clark faced a 120-month mandatory minimum pursuant to 21 U.S.C. § 851. (If not for the enhancement, Clark would have had an advisory guideline range of 92 to 115 months.)

Both the government and Clark argued for the 120-month mandatory minimum sentence. The district court adopted the facts of the PSR and determined that the PSR had calculated correctly Clark's offense level, criminal history, and guideline range. The court sentenced Clark to 120 months in prison to be served consecutively to the 71-month sentence he had received in the Illinois case.

On appeal, Clark argues that his later drug offense in the Illinois conviction should be treated under the Sentencing

Guidelines as "relevant conduct" for this case rather than as part of his criminal history. That means, he contends, his 120-month sentence in this case should run concurrently with the 71-month sentence he received in Illinois. Clark did not raise this argument in the district court. At sentencing, the government asked that Clark's sentence run consecutively to his Illinois sentence. Clark did not object. He requested only that this sentence run concurrently with any *state* sentence. The government argues that Clark therefore waived this issue.

Waiver is the intentional relinquishment of a known right, whereas forfeiture occurs when a defendant "negligently fails to assert a right in a timely fashion." *United States v. Brodie*, 507 F.3d 527, 530 (7th Cir. 2007); see *United States v. Olano*, 507 U.S. 725, 733 (1993). Concurrent sentences would reduce significantly the time Clark spends in prison. There is no reason for us to draw the inference here that Clark intentionally waived this argument. "Waiver principles should be construed liberally in favor of the defendant," and we are hesitant, without more, to construe a defendant's failure to object to a PSR as an intentional relinquishment of a known right. *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848–49 (7th Cir. 2005). This is especially the case where, as here, the defendant had no strategic reason to forgo this sentencing argument. See *United States v. Jenkins*, 772 F.3d 1092, 1096 (7th Cir. 2014).

Plain-error review, however, does not win relief for Clark on this issue. Plain-error review allows reversal where: (1) there was an error; (2) the error was plain; (3) the error affected the substantial rights of the defendant; and (4) the error seriously impacted the fairness, integrity, or public reputation of the proceedings. *Olano*, 507 U.S. at 732–38; *United States v. Duran*, 407 F.3d 828, 834 (7th Cir. 2005). Here, we need not

address the third and fourth elements. If any error occurred at all, it was not "plain."

Under § 5G1.3(b) of the Guidelines, where a defendant has an undischarged term of imprisonment, and where the conduct that led to the undischarged sentence

> is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:
>
> > (1) The court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
> >
> > (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

Section 5G1.3(d) further advises that "in any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." So if Clark's Illinois offense was relevant conduct here, the Guidelines would recommend concurrent sentences. If his Illinois offense was not relevant conduct here, the choice of consecutive or concurrent

sentences is left to the discretion of the sentencing judge, and there is no reason to find an abuse of discretion here.

As for the scope of relevant conduct, § 1B1.3(a)(1)(A) provides that "relevant conduct" is based on "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." "Section 1B1.3(a)(2) applies to grouped offenses and includes 'all acts and omissions described in subdivisions 1(A) and 1(B) that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. Schrode*, 839 F.3d 545, 551 (7th Cir. 2016), quoting U.S.S.G. § 1B1.3(a)(2).

"In assessing whether offenses are part of the same course of conduct, we focus on whether the government has demonstrated a significant similarity, regularity, and temporal proximity." *United States v. Baines*, 777 F.3d 959, 963 (7th Cir. 2015) (internal citations omitted). In considering whether an offense is relevant within the meaning of § 1B1.3, our court has emphasized several factors that should guide courts' analysis. "Sufficient factual overlap exists where the past and present offenses involve the same victims, stem from the same underlying conduct, or are in fact similar offenses." *United States v. Orozco-Sanchez*, 814 F.3d 844, 850 (7th Cir. 2016); see also *United States v. Sumner*, 325 F.3d 884, 889 (7th Cir. 2003) (in deciding relevant conduct in drug cases, courts look for "a strong relationship between the uncharged conduct and the convicted offense, focusing on whether the government has demonstrated a significant similarity, regularity, and temporal proximity"), quoting *United States v. Acosta*, 85 F.3d 275, 279 (7th Cir. 1996). The relevant conduct issue is similar to the issue in calculating criminal history under U.S.S.G. § 4A1.2

(defining "prior sentence"), where two similar prior convictions separated by an intervening arrest are counted separately. E.g., *United States v. Morgan*, 354 F.3d 621, 623 (7th Cir. 2003); *United States v. Bradley*, 218 F.3d 670, 673 (7th Cir. 2000).

The district court did not plainly err in not treating Clark's later offense in Illinois as relevant conduct for his Wisconsin conviction. To support his argument, Clark points to facts set forth in his Wisconsin PSR. The PSR explained that Clark traveled to Chicago to obtain the drugs that he would then sell in Wisconsin. This fact, Clark asserts, establishes that his drug activities in both states were part of the same course of conduct, his fentanyl-trafficking enterprise.

Under our precedents, this argument faces obvious "temporal proximity" and "similarity" problems. First, Clark was arrested in Wisconsin seven months before he was arrested for selling a fentanyl mixture in Illinois. Further, the offenses were dissimilar. In Wisconsin, Clark possessed more than 80 grams of fentanyl, most of which was packaged in retail packages of 0.5 grams. In Illinois, by contrast, he was arrested for selling a confidential informant more than 65.2 grams of fentanyl. And even if the offenses had been more similar, "the fact that a defendant commits a certain type of offense on multiple occasions does not inevitably mean that each separate offense is part of the same course of conduct." *Schrode*, 839 F.3d at 552. There is not enough here to have required the district court to have found such strong connections between these two drug offenses, especially without an objection by the defense to that effect. The offenses involved different buyers, in different cities, in different types of quantities, months apart, and with an intervening arrest for the Wisconsin offense.

"An error is 'plain' if the law at the time of appellate review shows clearly that it was an error." *United States v. Pierson*, 925 F.3d 913, 919 (7th Cir. 2019), citing *Henderson v. United States*, 568 U.S. 266, 279 (2013). Clark cannot establish with precedent or otherwise that the district court should have acted *sua sponte* to treat his Illinois offense as conduct relevant to his Wisconsin charge. Even if there might have been an error, it was not plain error to run Clark's two federal sentences consecutively.

B. *Supervised Release Condition*

Finally, the district court imposed a supervised release condition that Clark "Not meet, communicate or spend time with any persons known by defendant to be a member of or affiliate of any known street gang." On appeal, Clark argues that the term "affiliate" is unconstitutionally vague. He did not object to this condition at sentencing.

In at least scores of appeals over the past five years, in the wake of *United States v. Siegel*, 753 F.3d 705 (7th Cir. 2014), *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015), and *United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015), this court has wrestled with how best to handle appellate challenges to supervised release conditions that were not raised in the district court. Our recent opinion in *United States v. Flores*, 929 F.3d 443 (7th Cir. 2019), should bring some order to our caselaw in this niche of waiver law, particularly since it was circulated to the entire court under Circuit Rule 40(e), and no judge voted to hear the case en banc. Special considerations apply to our handling of supervised release conditions both because they are usually the least salient concern at the time of sentencing and, more important, because a defendant may challenge them *in the district court* at any time. See *Flores*, 929

F.3d at 451, citing 18 U.S.C. § 3583(e)(2); see also *United States v. Lewis*, 823 F.3d 1075, 1083 (7th Cir. 2016) (defendant waived challenge to supervised release condition: "sentencing in the district court is the main event").

This case meets the standards of waiver set forth in *Flores*: Clark had prior notice of the proposed conditions, including the "affiliate" condition. He had a meaningful opportunity to object, and his lawyer told the judge that the proposed conditions were acceptable. Clark even raised other objections to the PSR prior to sentencing but did not challenge this condition, which signals an intentional decision not to object. See *Flores*, 929 F.3d at 449.

We REVERSE the district court's denial of Clark's motion for a *Franks* hearing without an evidentiary hearing. We VACATE the district court's judgment and REMAND for a *Franks* hearing and appropriate action based on the outcome of that hearing, either granting Clark's motion to suppress or, if his motion is denied, reinstating the convictions and sentence. If the judgment is reinstated, the denial of Clark's motion to suppress and the district court's sentence are AFFIRMED.

SCUDDER, *Circuit Judge*, dissenting in part. The panel opinion is well done, and I join all parts of it except the conclusion that the district court should have granted Michael Clark's motion for a *Franks* hearing. In my view, Investigator Todd Maas's affidavit supporting the search warrant, while omitting facts damaging to the confidential informant's credibility—facts that unquestionably should have been included—adequately corroborated the information supplied by the informant. The district judge reached this precise conclusion, and under the deferential standard that guides our review on appeal, we should affirm. There was no clear error here.

**I**

The majority's opinion correctly articulates the standard for obtaining a *Franks* hearing: a defendant must make a substantial preliminary showing that an officer intentionally or recklessly omitted information from a search warrant affidavit and the omissions were material to the probable cause determination. See *United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014). The majority also rightly observes that the omission of adverse information about an informant's credibility does not automatically warrant a hearing. See *United States v. Hancock*, 844 F.3d 702, 709 (7th Cir. 2016). Instead the proper question is whether the affidavit would have established probable cause if the omitted information had been included. See *id.* at 708. To make this determination, we consider the totality of the circumstances, including "the extent to which the police have corroborated the informant's statements." *United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014).

All agree that Investigator Maas failed to disclose critical facts about the informant's background. In my judgment, though, the warrant application had sufficient corroboration

to overcome this omission and establish the requisite proba-
ble cause to search hotel room 203 at the Baywalk Inn. Maas
took care to include three key pieces of corroborating evi-
dence in his affidavit:

- In response to the informant's tip about possible drug
  dealing at the Baywalk Inn, Investigator Maas sur-
  veilled the hotel and observed a black male exit the
  hotel and quickly enter and exit at least five cars.
  Drawing on his experience as a narcotics investigator,
  Maas characterized this conduct as "textbook behav-
  ior to dealing narcotics."

- Maas discovered that only two of the hotel's 25 rooms
  had been rented with cash, with only one of the two—
  room 203—being rented for one night, which Maas
  explained was consistent with drug trafficking be-
  cause "drug dealers usually pay in cash and only stay
  one or two nights so to throw off police."

- Maas also reported that, upon arriving at the hotel, he
  had a conversation with a woman he identified by
  name in the warrant application, who said her 20-
  year-old daughter was addicted to heroin. The
  woman added that, before the officer arrived, she was
  "also watching the black male who [was] suspected to
  be dealing" and she followed him to room 203.

The majority's analysis discounts this information, reason-
ing that Investigator Maas's omission of material facts about
the informant's background compromised his credibility on
all other portions of the warrant application. Put another way,
if Maas omitted critical information about the informant's re-
liability, nothing else he included in his affidavit deserved to

be credited as part of the probable cause analysis. But our case law does not *require* such broad discounting and distrust. See, *e.g.*, *United States v. Bradford*, 905 F.3d 497, 503–05. The district court was not required to view as worthless the entirety of the corroborating information provided by Maas.

To be sure, a court faced with a reckless or intentional omission of material information may consider whether (and to what extent) the omission bears on the officer's credibility as part of its probable cause analysis. But I cannot say that the district court clearly erred, in light of other corroborating evidence, by choosing to credit Maas's affidavit despite his omission. So I would affirm the court's denial of Clark's motion for a *Franks* hearing.

## II

A final observation seems worthwhile. When this case entered federal court, a magistrate judge reviewed the state-court warrant application and noted that it, like many others prepared by law enforcement officers in Wisconsin, omitted information about the confidential informant's criminal history. The panel's opinion, aligned with our precedent, reinforces that this information is essential to a proper probable cause analysis under the Fourth Amendment. See, *e.g.*, *United States v. Musgraves*, 831 F.3d 454, 460 (7th Cir. 2016). Given the frequency with which search warrants sought and executed at the state level result in federal prosecutions, Wisconsin law enforcement would do well to revisit its warrant application practices. Omitting information about an informant's credibility creates real yet avoidable peril. Today's decision proves the point.