In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3626

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KENNETH MULLINS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:13 CR 50048-2 — **Frederick J. Kapala**, *Judge.*

ARGUED SEPTEMBER 10, 2015 — DECIDED OCTOBER 14, 2015

Before FLAUM, RIPPLE, and SYKES, *Circuit Judges.*

FLAUM, *Circuit Judge*. Defendant Kenneth Mullins operated a cocaine and marijuana stash house, along with Terrance Washington, in Mullins's apartment. While executing a search warrant based on an affidavit filed by Deputy Kyle Boomer, police uncovered a large quantity of drugs in the apartment. After Mullins's indictment, several factual inaccuracies in the affidavit came to light. Mullins filed a motion to suppress the evidence seized from the apartment, arguing

that Deputy Boomer's affidavit was insufficient to establish probable cause. Mullins also sought a *Franks* hearing based on the inaccuracies in the affidavit. The district court denied Mullins's motion to suppress as well as his request for a *Franks* hearing, finding that the factual inaccuracies in the warrant affidavit were immaterial to the probable cause determination. We affirm.

## I. Background

Kenneth Mullins began living in apartment #2 in the complex behind the BigFoot Lounge in Rockford, Illinois on March 1, 2013. Mullins and Terrance Washington (known as "T") used Mullins's apartment as a stash house for their cocaine and marijuana distribution operation.

On May 16, 2013, Winnebago County Sheriff's Deputy Kyle Boomer submitted to the Circuit Court of Winnebago County an affidavit in support of a search warrant for Mullins's apartment. The affidavit professed to be "based on [Deputy Boomer's] personal knowledge, on [his] review of records and other materials, including police reports obtained during the course of this investigation, as well as information provided to [him] by other investigators."

The affidavit relayed information gleaned from a confidential informant ("CI"). Specifically, it averred that the CI had told members of the Winnebago County Sheriff's Police Narcotics Unit that a black male known as T was selling large quantities of cocaine and marijuana in the Winnebago County area and that T was storing the drugs in an apartment behind the BigFoot Lounge. The CI claimed that T drove a black Cadillac Escalade with Minnesota registration 161EKT when he delivered drugs to buyers. Deputy Boom-

er's affidavit reported that he had driven to the area of the BigFoot Lounge and discovered—consistent with the CI's information—the Cadillac Escalade with Minnesota registration 161EKT in the parking lot of the apartment building behind the lounge.

The affidavit also described periodic surveillance that members of the Narcotics Unit had undertaken. It stated that Deputy Boomer, along with Winnebago County Sheriff's Deputy Kaiser, observed a black male exit apartment #2 and drive away in the Cadillac Escalade. Deputies Boomer and Kaiser had also seen multiple people visit the apartment and only stay for approximately three to four minutes at a time, which, based on Deputy Boomer's training and experience, was indicative of illegal narcotic sales.

Finally, the affidavit detailed a controlled drug buy that Deputy Boomer, Deputy Kaiser, and Winnebago County Sheriff's Deputy Jurasek conducted using the CI during the week of May 12, 2013. First, the officers met the CI and searched his person and vehicle to ensure the absence of narcotics and money. Next, Deputy Boomer provided the CI with currency from Narcotics Unit Funds, which he instructed the CI to use to purchase marijuana from T. Then, Deputy Boomer instructed the CI to call T and ask to buy drugs. The CI placed the call and T advised the CI to meet him at the Family Dollar, one block from Mullins's apartment. The affidavit stated that Deputy Boomer "then followed the CI to the Family Dollar parking lot."

According to the affidavit, Deputy Kaiser observed a black male exit the apartment and drive away in the Cadillac Escalade. The vehicle "was followed" (the affidavit does not say by whom, but suggests that it was Deputy Kaiser) "with

a clear and unobstructed view" to the Family Dollar. The CI approached the driver-side window and conducted a "hand-to-hand transaction." Deputy Kaiser then followed the suspect back to the apartment. Meanwhile, the CI was followed to a predetermined location, where the CI handed Deputy Boomer a clear plastic bag filled with marijuana, which the CI purportedly purchased from T.

The Circuit Court of Winnebago County issued a search warrant based on Deputy Boomer's affidavit. Winnebago County Sheriff's Deputies executed the warrant, recovering 626 grams of marijuana, sixteen grams of powder cocaine, more than 150 grams of crack cocaine, drug packaging materials, digital scales, and mail addressed to Mullins. On August 27, 2013, Mullins and Washington were charged with: (1) conspiracy to possess with intent to distribute twenty-eight grams or more of crack cocaine, cocaine, and marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1); and (2) possession with intent to distribute twenty-eight grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1).

On April 24, 2014, Mullins filed a motion to suppress the evidence seized from the apartment, arguing that Deputy Boomer's affidavit was insufficient to establish probable cause because it failed to establish the CI's reliability. The district court disagreed, finding that probable cause existed based on the specific details the CI provided and the fact that these details were corroborated by the officers, thereby substantiating the CI's reliability.

Alternatively, Mullins requested an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978),[1] arguing that he was entitled to a *Franks* hearing for three reasons. First, he contended that Deputy Boomer's affidavit conflicted with the police report that Deputy Boomer prepared after submitting the affidavit. The police report indicated that Deputy Boomer had maintained "surveillance of the residence to be searched near the time of the [controlled buy]." Mullins argued that this contradicted the affidavit's statement that Deputy Boomer had maintained surveillance of the CI throughout the controlled buy, while Deputy Kaiser conducted surveillance of the apartment.

Second, Mullins pointed out that the government admitted an error in the affidavit related to the CI's phone call. Although Deputy Boomer's affidavit averred that the CI arranged the controlled drug purchase by speaking with T on the phone, the CI actually spoke with an unknown third party, who then communicated with T and told the CI to meet T at the Family Dollar. Mullins argued that the specific person the CI spoke with matters for establishing probable cause. Third, Mullins pointed out that, contrary to Deputy Boomer's affidavit, which represented that the affidavit was based,

---

[1] *Franks v. Delaware* held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

438 U.S. at 155–56.

in part, on Deputy Boomer's review of police records, no police reports pertaining to the surveillance of the apartment existed at the time the warrant affidavit was filed.

The district court found that the affidavit established probable cause. The court also concluded that Deputy Boomer's police report did not directly contradict his warrant affidavit and that Deputy Boomer's mischaracterization of the CI's phone call and his erroneous claim that he had relied on police reports in preparing his affidavit were immaterial to the probable cause determination. Accordingly, the district court denied Mullins's motion to suppress and his request for a *Franks* hearing. Mullins entered a conditional plea of guilty to conspiracy to distribute and to possess with intent to distribute controlled substances,[2] and the district court sentenced Mullins to ninety-four months in prison.

Mullins appeals the district court's denial of a *Franks* hearing.

## II. Discussion

We review de novo the district court's determination that a search warrant was supported by probable cause. *United States v. Roth*, 201 F.3d 888, 891 (7th Cir. 2000). We review the district court's denial of a *Franks* hearing for clear error. *United States Harris*, 464 F.3d 733, 737 (7th Cir. 2006). "Although the factual portion of the clear error inquiry requires deference to the district court, any legal determinations that fac-

---

[2] Mullins reserved the right to appeal the district court's denial of his motion to suppress.

tored into the district court's ruling are reviewed de novo." *United States v. Robinson*, 546 F.3d 884, 887 (7th Cir. 2008).

"The Fourth Amendment requires that, absent certain exceptions not applicable here, police must obtain a warrant from a neutral and disinterested magistrate before commencing a search." *Id.* (citing *Jones v. Wilhelm*, 425 F.3d 455, 462 (7th Cir. 2005)). No warrant shall issue unless there is probable cause, as typically set forth in a warrant affidavit, to justify the search. *See* U.S. Const. amend. IV. Probable cause is established when, in light of the totality of the circumstances, the issuing judge can make a practical, common-sense determination that there is a fair probability that contraband or evidence of a crime will be found in a particular place. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).

A defendant is entitled to a *Franks* hearing—an evidentiary hearing regarding the veracity of information included in a search warrant application—if he can make a substantial preliminary showing that: (1) the warrant affidavit contained false statements, (2) these false statements were made intentionally or with reckless disregard for the truth, and (3) the false statements were material to the finding of probable cause. *See United States v. Williams*, 718 F.3d 644, 647 (7th Cir. 2013). This Court has interpreted the holding of *Franks* to apply to omissions in addition to affirmative misrepresentations. *Robinson*, 546 F.3d at 888 (citing *Harris*, 464 F.3d at 738). If sufficient allegations existed warranting the search irrespective of the affiant's alleged errors, a hearing is unnecessary and the motion should be denied. *See Harris*, 464 F.3d at 738. If a defendant at a *Franks* hearing establishes by a preponderance of the evidence that the false statements or omissions were made intentionally or with reckless disre-

gard for the truth, and without the false material the affidavit's remaining content is insufficient to establish probable cause, the search warrant is invalid and the fruits of the search must be excluded from evidence. *Franks*, 438 U.S. at 56.

Mullins argues that the district court erred in finding that the factual inaccuracies in the warrant affidavit were not material to the probable cause determination and thus did not meet the third requirement of the *Franks* inquiry. On review, we consider "the affidavit, eliminating any false statements and incorporating omitted material facts, and determine[] whether probable cause existed." *Harris*, 464 F.3d at 738. In this case, correcting the factual inaccuracies in the affidavit would not have altered the probable cause determination. Since Mullins's argument fails to satisfy the materiality element of the *Franks* inquiry, we need not determine whether Deputy Boomer's erroneous statements and omissions were intentional or reckless.

As a preliminary matter, we address the allegedly conflicting statements: first, Deputy Boomer's affidavit indicated that Deputy Boomer maintained surveillance of the CI throughout the controlled buy, while Deputy Kaiser conducted surveillance of the apartment; then, the police report that Deputy Boomer prepared after submitting the affidavit stated that Deputy Boomer had maintained surveillance of the residence near the time of the controlled buy. We note that the district court did not offer an explanation for its conclusion that "[t]he court also disagrees that Deputy Boomer's report about his own observations contradicts the statement he made in the warrant affidavit about Deputy Kaiser's observations." However, it does not matter for our analysis

whether these statements were conflicting. We do not need to reach the issue of whether the statements were contradictory because we find that this detail about the controlled buy is not material to the probable cause determination. *Cf. United States v. McMurtrey*, 704 F.3d 502, 513 (7th Cir. 2013) (finding the inconsistencies between two affidavits material to the finding of probable cause because if the contradictory information is disregarded, "the probable cause disappears"). Even accepting that the report did conflict with the affidavit and assuming, arguendo, that Deputy Boomer intentionally or recklessly misrepresented the extent of his surveillance of the CI during the drug buy in the affidavit, this inaccuracy fails the materiality requirement of the *Franks* inquiry. Mullins argues that if Deputy Boomer did not have sight of the CI throughout the controlled buy, then the CI had the opportunity to obtain the marijuana from another source, so the affidavit does not support a finding of probable cause. We disagree.

In this case, probable cause is supported by the totality of the circumstances, particularly the level of detail that the CI provided and the officers' corroboration of these details, which substantiated the CI's reliability. In *United States v. Sutton*, we stated:

> When probable cause is supported by information supplied by an informant, we particularly look to several factors: (1) the degree to which the informant has acquired knowledge of the events through firsthand observation, (2) the amount of detail provided, (3) the extent to which the police have corroborated the informant's statements, and (4) the interval be-

> tween the date of the events and the police of-
> ficer's application for the search warrant.

742 F.3d 770, 773 (7th Cir. 2014). "None of these factors is de-
terminative," and "a deficiency in one factor may be com-
pensated for by a strong showing in another or by some oth-
er indication of reliability." *United States v. Peck*, 317 F.3d 754,
756 (7th Cir. 2003) (citation and internal quotation marks
omitted). Mullins challenges the finding of probable cause
based on the first *Sutton* factor, arguing that the affidavit did
not establish that the CI had personal knowledge that con-
trolled substances were within Mullins's residence. Howev-
er, we find that the second and third factors weigh strongly
in favor of a finding of probable cause, and therefore, taken
as a whole, the *Sutton* factors support the conclusion that
there was a fair probability that a search would uncover con-
traband or evidence of a crime.[3]

First, the CI provided specific details about a black male
called T dealing marijuana and cocaine out of an apartment
located behind the BigFoot Lounge. The CI also supplied
specific details about the car T drove when he sold drugs,
noting that it was a black Cadillac Escalade with a specific
Minnesota registration. *Compare United States v. Lloyd*, 71 F.3d
1256, 1263 (7th Cir. 1995) (finding informant's information
sufficiently detailed to support issuance of a warrant when
informant gave a detailed description of the building, the

---

[3] We note that Mullins did not raise an argument regarding the
fourth *Sutton* factor before the district court or on appeal, but we agree
with the district court's determination that since the controlled buy oc-
curred during the week of May 12, 2013 and Deputy Boomer submitted
his search warrant application on May 16, 2013, the fourth factor also
weighs in favor of finding probable cause.

location of the apartment, and the weapons within the building, and some of the information was independently verified by officers), *with Peck*, 317 F.3d at 756–57 (finding informant's statement that she had been in the target's house and was shown a substance that she recognized as drugs lacked sufficient detail to support probable cause, especially since the police did not corroborate the allegations).

Second, Deputies Boomer and Kaiser corroborated the CI's information by locating the Cadillac Escalade in the parking lot of the apartment complex behind the BigFoot Lounge and verifying the vehicle's Minnesota registration. Further, they observed a black male exit the apartment and drive away in the Cadillac Escalade and witnessed presumed buyers making three to four minute visits to the apartment, thereby substantiating the CI's reliability. *See United States v. Gilbert*, 45 F.3d 1163, 1166 (7th Cir. 1995) ("Reliability [of an informant] may be shown … through independent confirmation or personal observation by the police, or by other methods.").

Finally, Deputies Boomer, Kaiser, and Jurasek further corroborated the CI's information by executing a controlled purchase of marijuana from T. *See United States v. McKinney*, 143 F.3d 325, 329 (7th Cir. 1998) ("Controlled buys add great weight to an informant's tip."); *United States v. Reddrick*, 90 F.3d 1276, 1281 (7th Cir. 1996) (concluding that the officer's testimony concerning the controlled buys, combined with the informant's information, was enough to support a finding of probable cause). Deputy Boomer instructed the CI to arrange a drug buy with T, who told the CI, through an intermediary, to meet him at the Family Dollar. Shortly thereafter, as expected, T drove the Cadillac Escalade from the

target apartment to the Family Dollar, where the officers observed a hand-to-hand transaction. The CI was then followed to a predetermined meet-up location, where the CI gave Deputy Boomer a plastic bag of marijuana.

On these facts, all of which members of the Winnebago County Sheriff's department averred to have witnessed, there was a fair probability that drugs would be found in Mullins's apartment. *See United States v. Orozco*, 576 F.3d 745, 749 (7th Cir. 2009) (discussing the showing needed to establish probable cause to search a drug dealer's home). Any additional details are superfluous and immaterial to the finding of probable cause, including whether Deputy Boomer maintained surveillance of the CI throughout the controlled buy, whether the CI spoke directly to T or to an intermediary on the phone to set up the drug buy, and whether Deputy Boomer relied on police reports. Even if Deputy Boomer had not maintained surveillance of the CI throughout the entirety of the controlled buy, this detail is not necessary for a finding of probable cause. With three officers—Deputies Boomer, Kaiser, and Jurasek—conducting the controlled buy, it is reasonable that among them they were able to observe both the CI and T at the necessary times to establish probable cause. As the district court noted, there is no indication that the third party intermediary on the phone was the source of any information in the affidavit except for the location of the controlled buy, and that information was corroborated when the officers observed the hand-to-hand transaction at the Family Dollar.

Additionally, Deputy Boomer's misrepresentation that he relied on police reports that did not yet exist was not material to the probable cause determination. Even if Deputy

Boomer's affidavit professed to be "based on [Deputy Boomer's] personal knowledge, on [his] review of records and other materials, as well as information provided to [him] by other investigators," and had no mention of police reports, this would not alter the finding of probable cause. The officers' surveillance efforts provided Deputy Boomer with sufficient information to prepare a warrant affidavit without police reports. The inclusion of "police reports" on the list of items Deputy Boomer relied upon may well have been the application of boilerplate language for a standard search warrant affidavit.

Finally, Mullins cites *United States v. Glover*, 755 F.3d 811 (7th Cir. 2014), and *United States v. Bell*, 585 F.3d 1045 (7th Cir. 2009), in support of the proposition that a *Franks* hearing is required when an affiant omitted credibility information relating to a confidential informant. Yet, both cases are readily distinguishable. In *Glover*, a Chicago police officer submitted an affidavit in support of a search warrant application, which relayed information from a CI about a suspected drug dealer. 755 F.3d at 814–15. We reversed the district court's denial of a *Franks* hearing based on the affidavit's lack of information regarding the CI's credibility. *Id*. at 818. However, the search warrant in *Glover* was issued based almost entirely on the informant's report. *See id.* at 817 (noting that the informant's tip was minimally corroborated). Here, by contrast, Deputy Boomer's affidavit did not rely exclusively on the CI's tips, as the critical information was corroborated by the officers' firsthand observations. In *Glover*, the Court acknowledged that where information about credibility is not available, other factors such as extensive corroboration may overcome the doubt inherent in relying on an informant without a track record. *Id.* at 818.

*Bell* is also distinguishable. In *Bell*, we deemed a search warrant application lacking where officers failed to provide information relating to the CI's track record, background, or relationship to the target, depriving the district court of a fair opportunity to assess the CI's reliability and basis of knowledge. 585 F.3d at 1048–52. Sufficient corroborative efforts on the part of the officers or a sufficient amount of detail provided by the CI could have compensated for such a dearth of information. *Id.* at 1050–51. However, the CI's information was fairly general, and the extent of the officers' corroborative efforts was a conclusory statement about other unnamed informants implicating the target as a drug dealer. *Id.* Here, by contrast, the CI provided specific details about the suspected criminal activity occurring in Mullins's apartment, and the critical details were corroborated through the officers' surveillance efforts and firsthand observations.

In sum, Mullins has not made a substantial preliminary showing that Deputy Boomer's erroneous statements and omissions were material to the probable cause determination. Taking into account the totality of the circumstances, there was a fair probability that contraband or evidence of a crime would be found in Mullins's apartment. *See Gates*, 462 U.S. at 238. The district court did not clearly err in determining that the factual inaccuracies in the warrant affidavit failed the materiality requirement of the *Franks* inquiry.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Mullins's request for a *Franks* hearing.