In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-1082

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL KARMO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:20-cr-00170 — **J.P. Stadtmueller**, *Judge.*

ARGUED MAY 15, 2024 — DECIDED JULY 31, 2024

Before BRENNAN, KIRSCH, and LEE, *Circuit Judges.*

KIRSCH, *Circuit Judge.* On September 1, 2020, Michael Karmo told a friend that he was traveling with firearms (including two machine guns) to Kenosha, Wisconsin, during a period of severe civil unrest and that people there were shooting others. The friend informed local police, who in turn notified the FBI that Karmo was traveling to Kenosha to shoot people and loot. The FBI submitted an exigent circumstances form to AT&T pursuant to the Stored Communications Act

conveying this information and requesting real-time cell site location information (CSLI) on Karmo's phone. Based on the real-time CSLI, law enforcement located Karmo in under two hours in a hotel parking lot. He consented to searches of his vehicle and hotel room, which each contained multiple firearms and ammunition. The next day, September 2, local police notified the FBI that, contrary to what the FBI submitted in the AT&T exigency form, Karmo did not say that he intended to shoot people and loot, just that people in general were doing so. The FBI obtained search warrants for Karmo's residence and hotel room and a criminal complaint charging him with possessing a firearm as a felon. In support of the warrants and complaint, the FBI submitted affidavits incorrectly stating that it had learned on September 1 (rather than September 2) that Karmo himself did not say that he intended to shoot people and loot.

Following Karmo's indictment, he moved to suppress the evidence resulting from the real-time CSLI collection and requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). He principally challenged the inaccurate statement in the AT&T exigency form that he intended to shoot people and loot. The district court denied his motion. Karmo later pleaded guilty and was sentenced. He now appeals. Because law enforcement reasonably believed that probable cause and exigent circumstances existed, and a *Franks* hearing is inapplicable in this context, we affirm.

I

In August 2020, severe civil disorder broke out in Kenosha, Wisconsin. During that period of unrest, Michael Karmo and Cody Smith drove from Missouri to Kenosha. On their way, they stopped in Waverly, Iowa, just after midnight

on September 1 to meet with one of Karmo's friends. Karmo invited the friend to come with him and Smith to Kenosha, but she declined. Karmo and Smith left shortly thereafter.

Later that day, Karmo's friend went to the Waverly Police Department and spoke with Officer Dave Lindley. She informed Officer Lindley of Karmo and Smith's recent visit, reported that they claimed to have firearms (including two machine guns) in their vehicle, and shared her text messages with Karmo, which included a photograph of Karmo and Smith holding firearms. She also showed Officer Lindley a photograph Karmo had sent her of a rifle with a drum magazine, which Karmo captioned, "This the game changer." According to Karmo's friend, Karmo told her that people were going to Kenosha and "picking people off" and that he wanted to "see what's going on." She provided a written statement recapping their visit before leaving.

Officer Lindley then called Sergeant Joshua Hecker of the Kenosha Police Department to alert him that Karmo and Smith were traveling to Kenosha with firearms. Officer Lindley informed Sergeant Hecker that they were traveling to Kenosha to loot and to "pick people off." Shortly after, Sergeant Hecker relayed this information to the FBI, who learned that Karmo was a felon and found multiple photographs of him holding firearms on his Facebook page.

Based on this information, and pursuant to the Stored Communications Act's exigent circumstances exception, the FBI submitted an exigent circumstances form to AT&T that same day to obtain real-time cell site location information on Karmo's cell phone. Specifically, the FBI requested updated CSLI every 15 minutes for a period of 48 hours. In support of the request (and consistent with the information it received

from Sergeant Hecker), the FBI noted that Karmo was traveling to Kenosha with firearms to "pick people off and loot." AT&T complied with the FBI's request and started sharing Karmo's real-time CSLI in the early evening. After collecting Karmo's CSLI for around an hour and a half, law enforcement located Karmo in the parking lot of a hotel near Kenosha. Upon the FBI agents' arrival, Karmo and Smith exited their vehicle, were detained, and consented to a vehicle search, where law enforcement recovered multiple firearms and firearm magazines, body armor, and a folding knife. They also consented to a search of their hotel room, which contained additional firearms and ammunition.

On September 2, the Waverly Police Department sent the FBI a formal incident report recounting Officer Lindley's interaction with Karmo's friend. The report noted that Karmo told his friend that people were going up to Kenosha and picking people off, but—contrary to the AT&T exigency form—Karmo did not state that he himself would do that. On September 3, the FBI obtained a search warrant for Karmo's residence, where agents found several firearms and rounds of ammunition. Further, an FBI agent obtained a criminal complaint charging Karmo with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On September 4, the FBI obtained a search warrant for Karmo's hotel room to collect items that officers had observed during the consent search but did not seize. In support of the search warrants and criminal complaint, the FBI submitted affidavits stating, among other things, that the Waverly Police Department sent the formal incident report to the FBI on September 1 (rather than the actual date it was sent, September 2). Though the warrants inaccurately reflected when the FBI learned this information, they clarified that while Karmo said that people

were going to Kenosha to shoot people and loot, he did not state that he himself would do so.

After being indicted for possessing firearms as a felon, 18 U.S.C. § 922(g)(1), and possessing an unregistered firearm, 26 U.S.C. § 5861(d), Karmo moved to suppress the evidence resulting from the CSLI collection and requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Karmo asserted that the real-time collection of CSLI was an unlawful Fourth Amendment search that was not justified by exigent circumstances. Specifically, he argued that the AT&T exigency form "fabricated a threat to public safety" because it falsely detailed that he had expressed an intent to loot and to pick people off when his friend had informed officers that Karmo did not state that he personally planned to do so. He further requested a *Franks* hearing on the veracity of the contents of the form. The district court denied Karmo's motion.

Karmo pleaded guilty to unlawfully possessing a firearm pursuant to a plea agreement and reserved his right to appeal any issue raised in his motion to suppress. He was sentenced to 64 months' imprisonment, and this appeal followed.

## II

### A

The FBI obtained Karmo's real-time CSLI pursuant to the Stored Communications Act's exigent circumstances exception, which allows a service provider to disclose records if it, "in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay …." 18 U.S.C. § 2702(c)(4). Even if Karmo could prove a violation of the Stored Communications Act, suppression of evidence is not an available remedy. *Id.*

§ 2708 ("The remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter."); *United States v. Guerrero*, 768 F.3d 351, 358 (5th Cir. 2014) ("[S]uppression is not a remedy for a violation of the Stored Communications Act."); *United States v. Smith*, 155 F.3d 1051, 1056 (9th Cir. 1998) ("[T]he Stored Communications Act expressly rules out exclusion as a remedy."). Thus, to obtain the relief he seeks, Karmo must establish a Fourth Amendment violation. See 18 U.S.C. § 2708; *Guerrero*, 768 F.3d at 358; cf. *Davis v. United States*, 564 U.S. 229, 236–37 (2011) (noting that the purpose of the exclusionary rule "is to deter future Fourth Amendment violations"). And, to proceed along this path, Karmo must show that he was subjected to a Fourth Amendment search in the first place.

The government on appeal argues that its limited use of real-time CSLI does not qualify as a Fourth Amendment search. In Karmo's view, however, the government waived this argument by electing not to present it below. But we need not decide this issue, because even assuming (without deciding) that the government's use of CSLI data in this case constituted a search for purposes of the Fourth Amendment, we would still affirm.

B

Assuming (without deciding) that a Fourth Amendment search occurred, we would affirm the district court's denial of Karmo's motion to suppress without conducting a *Franks* hearing. Though law enforcement did not obtain a search warrant before collecting Karmo's real-time CSLI, warrantless searches are permissible if law enforcement has probable cause to believe that illegal activity is occurring and that

exigent circumstances are present. *Jacobs v. City of Chicago*, 215 F.3d 758, 769 (7th Cir. 2000); see also *Carpenter v. United States*, 585 U.S. 296, 319 (2018) (noting that law enforcement does not need a warrant to access historical CSLI if exigent circumstances are present). When viewing the totality of the circumstances, *United States v. Rosario*, 5 F.4th 706, 713 (7th Cir. 2021), probable cause exists if there is "a reasonable belief that a search will turn up evidence of criminal activity," *United States v. Hicks*, 650 F.3d 1058, 1065 (7th Cir. 2011). Exigent circumstances are present if law enforcement reasonably believes that the safety of the public is threatened. *United States v. Huddleston*, 593 F.3d 596, 600 (7th Cir. 2010); see also *United States v. Maxwell*, 85 F.4th 1243, 1246 (7th Cir. 2023) (noting that exigent circumstances are present if there is a need to render emergency aid).

Karmo principally challenges the inaccurate statement in the AT&T exigency form that he intended to pick people off and loot. But even excluding that misrepresentation, the totality of the other circumstances supports a reasonable belief that there was a threat to public safety and that tracking Karmo's real-time CSLI would reveal criminal activity. Karmo's friend alerted law enforcement that Karmo and Smith said that they were traveling with firearms (including two machine guns) to Kenosha during a period of severe civil unrest when people were "picking people off" and that Karmo wanted to "see what's going on." Karmo's friend also showed law enforcement a photograph of Karmo holding a firearm and a photograph that Karmo had sent her of a rifle that he referred to as "the game changer." And law enforcement learned that Karmo was a felon and found his Facebook page, which showed multiple photographs of him holding firearms. Thus, considering the totality of the circumstances,

including the extreme civil unrest in Kenosha at the time and that Karmo, a known felon, said that he was traveling there with machine guns (and had stated that he possessed a firearm he believed to be the "game changer"), law enforcement's tracking of Karmo's real-time CSLI was supported by exigent circumstances. And as discussed, absent a constitutional violation, suppression of evidence is not an available remedy.

Further, a *Franks* hearing—"an evidentiary hearing regarding the veracity of information" provided to a judge to determine the existence of probable cause, *United States v. Mullins*, 803 F.3d 858, 861 (7th Cir. 2015)—is inapplicable here. The purpose of a *Franks* hearing is to determine whether the information provided to the judge would have still supported probable cause, setting aside any intentional or reckless misrepresentations or omissions. See *id.* at 861–62; *Lickers v. United States*, 98 F.4th 847, 858–59 (7th Cir. 2024). But a judge never made a probable cause determination. The AT&T exigency form was not a search warrant, and law enforcement's collection of Karmo's real-time CSLI was supported by probable cause even absent the inaccurate statement that Karmo intended to pick people off and loot. In other words, there is no search warrant to invalidate, and that the AT&T exigency form contained a misrepresentation is irrelevant because law enforcement had authority under the Fourth Amendment (exigent circumstances supported by probable cause) to collect Karmo's CSLI regardless. Thus, the district court did not err in denying Karmo's request for a *Franks* hearing.

AFFIRMED