In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-2384

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEVEN J. HECKE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:20-cr-7 — **Holly A. Brady**, *Chief Judge.*

ARGUED SEPTEMBER 5, 2024 — DECIDED AUGUST 6, 2025

Before SYKES, *Chief Judge*, and ST. EVE and LEE, *Circuit Judges*.

LEE, *Circuit Judge*. Based on tips from a confidential informant, police obtained search warrants as part of an investigation into Steven Hecke's sale of methamphetamine and fentanyl. Hecke was eventually charged with drug and firearm offenses. A jury convicted Hecke of all counts, and the district court sentenced him to life imprisonment.

Hecke presents three arguments on appeal. First, he challenges the district court's denial of his request for a *Franks* hearing to probe affidavits that supported the initial search warrants. Second, he claims that the district court permitted the government to constructively amend his indictment by presenting evidence beyond the scope of his firearm possession charge. Third, he argues that the district court erred by applying three enhancements when fashioning his sentence. Because we find no error, we affirm on all grounds.

## I

We recount the events leading up to the initial search warrants, the resulting investigation that led to the federal search warrant and ultimately the indictment, Hecke's request for a *Franks* hearing, and his sentencing.

## A

On November 12, 2019, Detective Darren Compton submitted identical affidavits to the Allen County Superior Court in Indiana to obtain two search warrants: one to place a GPS tracker on Hecke's truck, and another to obtain Hecke's cell phone records. The affidavits relied on information gleaned from a confidential informant (CI), who was interviewed by investigators after a search of the CI's apartment revealed illegal drugs and firearms. The CI told the investigators that he had previously purchased methamphetamine from Hecke and that Hecke had shared he was being "supplied by the Mexican Cartel."

Other information in the affidavits that was obtained from the CI, such as Hecke's address, as well as the make, model, and license plate number of Hecke's truck, was confirmed by Detective Compton through physical surveillance. The Allen

County Drug Task Force also observed a meeting between Hecke and the driver of a Lexus at Hecke's address, where the driver carried a backpack into Hecke's home and Hecke unloaded something from the Lexus into a large tote that he brought into the house. Hecke then returned an empty tote to the trunk of the Lexus, after which the driver of the Lexus drove away. Detective Compton stated in his affidavits that, based on his training and experience, it was common for large-quantity drug traffickers to utilize couriers to transport drugs and money to and from their suppliers.

Based on the information provided by Detective Compton in his affidavits, the state magistrate judge determined that there was probable cause to support Detective Compton's search warrant requests. The warrants were issued that same day and renewed twice over the course of the investigation.

Aided by the GPS tracking information and phone records obtained pursuant to these search warrants, the government continued its investigation into Hecke's drug-related activities. The CI, who agreed to cooperate in the investigation, assisted law enforcement by conducting controlled buys on November 13 and December 5, 2019. For each controlled buy, the CI contacted Hecke on his cell phone and arranged to purchase half a pound of methamphetamine. After each transaction, officers debriefed the CI, had the CI identify Hecke from a photo array, verified the CI's story against recordings of his meeting with Hecke, and confirmed that the substance he received from Hecke tested positive for methamphetamine.

During the second controlled buy, which took place at Hecke's residence, Hecke had the CI wait in his apartment while he walked to a stash house up the street. A few minutes later, Hecke returned and gave the CI the half-pound of

methamphetamine. While he was waiting, the CI observed drugs, cash, and an Uzi gun with a 30-round magazine in Hecke's bedroom.

Officers obtained federal search warrants on January 13, 2020, to search Hecke's truck, his cell phone, his house, his nearby stash house, and two storage units that he frequently visited during the course of the investigation. The federal search warrants were based, in part, on information in Detective Compton's affidavits and evidence that the state search warrants had generated.

When the warrants were executed that same day, police found Hecke transporting three buckets—each containing what was later confirmed to be methamphetamine—from his truck to his house. Inside Hecke's bedroom, police found more methamphetamine in addition to fentanyl, cocaine, a couple of digital scales, as well as plastic bags and gloves. Police also found three guns in Hecke's bedroom closet and ledgers from Hecke's bookshelf that recorded tens of thousands of dollars in drug sales and outstanding debts.

Hecke was charged with distributing methamphetamine during the controlled buys on November 13 (Count 1) and December 5, 2019 (Count 2); operating his home for the purpose of distributing a controlled substance (Count 5); possessing methamphetamine and fentanyl on January 13, 2020, with intent to distribute (Count 6); possessing a firearm on January 13, 2020, in furtherance of the drug charge "alleged

in Count 6" (Count 7); and possessing a firearm while a felon (Count 8).[1]

## B

Hecke filed a pretrial motion requesting a *Franks* hearing, challenging the veracity of Detective Compton's affidavits that were submitted to obtain the initial state search warrants.[2] According to Hecke, Detective Compton's affidavits had omitted "all credibility information about the CI," including "the CI's criminal history, which included multiple convictions for crimes of dishonesty," as well as the fact that the CI had "flipped" to cooperate with the investigators. Later, Hecke also moved to suppress evidence seized pursuant to the federal search warrants on January 13, 2020, arguing that the federal warrants relied on "tainted information" obtained through the state warrants.

The district court denied Hecke's motions. Acknowledging that Detective Compton's state court affidavits had omitted details about the CI's criminal history, recent arrest, and agreement to cooperate with authorities, the court concluded that these omissions were immaterial to the determination of probable cause. In arriving at this determination, the court

---

[1] Counts 3 and 4 were directed at Hecke's codefendant, Samuel Battell, who later pleaded guilty and testified against Hecke at trial.

[2] In *Franks v. Delaware*, the Supreme Court held that, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." 438 U.S. 154, 155–56 (1978).

emphasized the "fresh and specific details" of the CI's tips, the corroboration of these details by investigators, and the reasonable inference the magistrate judge could draw about the CI's "generally unsavory character" and self-serving motivation from Detective Compton's affidavits. Additionally, the court held that Hecke had failed to show that the omissions in the affidavits were intentional or reckless—a prerequisite showing for a *Franks* hearing. *See Franks*, 438 U.S. at 155–56.

Relevant to this appeal, at trial, Hecke requested a unanimity instruction for Count 7 (having a firearm in furtherance of his drug possession with intent to distribute). Specifically, Hecke noted that the government's evidence included firearms seized from different locations, possibly attributable to different people, and believed that the jury should be required to unanimously agree on "which guns are attributable to the specific drugs" found on January 13 before convicting him of Count 7. The district court denied this request.

Ultimately, the jury convicted Hecke on all counts, and the case proceeded to sentencing. In its presentence investigation report (PSR), the Probation Office recommended three enhancements that Hecke challenges on appeal: (1) two levels under the United States Sentencing Guidelines § 2D1.1(b)(2) for making credible threats of violence toward multiple individuals; (2) two levels under § 3B1.1(c) for managing or supervising Battell; and (3) two levels under § 3C1.1 for attempting to obstruct or impede the administration of justice. Hecke challenged each enhancement, but the district court rejected his arguments and calculated a total offense level of 46.

Then, applying the Guidelines direction that "[a]n offense level of more than 43 is to be treated as an offense level of 43,"

the court determined that Hecke's total offense level was 43. U.S.S.G. ch. 5, pt. A, cmt. n.2. And, after considering the statutory sentencing factors, the court imposed a life sentence, explaining that the sentence was within the Guidelines range and that it was "the sentence the Court would have imposed, even if it had ruled differently on the defendant's … objections."

## II

On appeal, Hecke argues that the district court erred by (1) denying his request for a *Franks* hearing to investigate misrepresentations in Detective Compton's state warrant affidavits, (2) permitting the government to constructively amend Count 7 of the indictment, and (3) applying the three sentencing enhancements to his offense level during sentencing. We address each argument in turn.

## A

Hecke first claims that Detective Compton's affidavits improperly (1) omitted damaging credibility information about the CI, (2) obscured information about a warrantless GPS search, and (3) suggested that there were two informants when there was only one. These reckless misrepresentations, Hecke argues, entitled him to a *Franks* hearing.

We review the district court's denial of a *Franks* hearing for clear error. *United States v. McGhee*, 98 F.4th 816, 821 (7th Cir. 2024). We give deference to the district court's factual findings, but any legal determinations underlying the ruling are reviewed *de novo*. *Id*. We will reverse the ruling only if, after reviewing the record as a whole, we are of "the definite and firm conviction that a mistake has been committed." *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001) (internal

quotation marks omitted). As Hecke sees it, the district court committed clear error when denying his request for a *Franks* hearing to probe into the affidavits Detective Compton submitted to obtain the state search warrants.

The Supreme Court has recognized that all warrants carry "a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. However, if a defendant can make a "substantial preliminary showing" that a warrant affidavit included a false statement, he is entitled to a hearing. *Id.* at 155–56. The false statement must have been made "intentionally or with reckless disregard for the truth," and must also be "material to the finding of probable cause." *United States v. Sanford*, 35 F.4th 595, 597 (7th Cir. 2022) (internal quotation marks omitted); *see also Franks*, 438 U.S. at 155–56. This showing "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171.

**1**

We begin with Hecke's complaint that Detective Compton's affidavits improperly omitted information about the CI's criminal history and cooperation agreement with the government. Hecke believes that the missing information "went directly to [the CI's] credibility," especially because the CI had three prior convictions for forgery. For its part, the government does not dispute that the affidavit omitted this information or that the information was relevant to the CI's credibility. We are left then to decide the omission's materiality—that is, whether the omission would have altered the probable cause determination. *See United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013) ("To obtain a hearing, the defendant must also show that if the deliberately or recklessly

false statements were omitted, or if the deliberately or reck-lessly misleading omissions included, probable cause would have been absent.") (citing *Franks*, 438 U.S. at 171–72).

When an affidavit relies on information from an inform-ant, we typically consider five factors to determine material-ity: "(1) the level of detail the informant provided; (2) the ex-tent to which the informant's information is based on his or her own first-hand observations; (3) the degree to which po-lice have corroborated the informant's information; (4) the time elapsed between the events reported and the warrant ap-plication; [and (5)] whether the informant appeared or testi-fied before the magistrate." *United States v. Clark*, 935 F.3d 558, 564 (7th Cir. 2019) (citation modified). We have repeatedly stressed that "[n]one of these factors is determinative," and that "a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of re-liability." *United States v. Mullins*, 803 F.3d 858, 863 (7th Cir. 2015) (internal quotation marks omitted).

Generally, "where a warrant is obtained based on an in-formant's tip, 'information about the informant's credibility or potential bias is crucial.'" *Clark*, 935 F.3d at 565 (quoting *United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014)). This is because "[o]mitting this information deprives the magis-trate of important data in the probable-cause calculus." *United States v. Bradford*, 905 F.3d 497, 504 (7th Cir. 2018). At the same time, we do not require a *Franks* hearing every time an affida-vit omits credibility information about the informant. *Id.*; *Clark*, 935 F.3d at 565. Indeed, we have repeatedly affirmed a district court's denial of a *Franks* hearing where the inform-ant's information was sufficiently corroborated by police or other indicators of reliability allowed a court to assess an

informant's credibility. *See, e.g.*, *Bradford*, 905 F.3d at 504–05; *United States v. Hancock*, 844 F.3d 702, 710 (7th Cir. 2016); *Mullins*, 803 F.3d at 863.

In *Bradford*, for example, the warrant application did not disclose that the informant had three felony convictions, was on probation, and was being paid for his help. 905 F.3d at 502. We nevertheless concluded that, because the informant's information was "fresh, firsthand, quite detailed, and corroborated," the magistrate judge could still find probable cause. *Id*. at 504. The informant had provided specific descriptions of the defendant's firearms, down to their precise locations within the home. *Id*. The defendant's girlfriend corroborated the reports that the defendant kept guns at home and even turned over a pistol that matched the serial-number tag that was recovered in an earlier search. *Id*. "Considering the warrant application as a whole," we noted, "the omission of facts bearing negatively on [the informant's] credibility was not fatal to the magistrate's probable-cause finding." *Id*. at 505.

We came to the same conclusion in *Hancock*. 844 F.3d at 709–10. There, the investigator also left out details about the informant's criminal record in the warrant affidavit. *Id*. at 706. Although the magistrate judge agreed with the defendant that the omission was reckless, the judge concluded that probable cause would exist even if the omitted facts had been incorporated in the affidavit. *Id*. at 706–07. In doing so, the court emphasized that, given the informant's "long-term, intertwined history as both a criminal and a snitch, a court considering the reliability of his information would have to be skeptical but receptive." *Id*. at 708. Furthermore, the informant had provided a "lengthy, richly detailed, first-hand report" of the defendant's activities, which was corroborated by text messages,

a separate report of assault to the police, and the defendant's own prior statements to an investigator. *Id*. at 708–09.

Because we encounter similar facts here, we likewise affirm the district court's denial of Hecke's request for a *Franks* hearing. The CI, whose information Detective Compton relied on for his warrant affidavits, had fresh and firsthand knowledge of Hecke's drug activities, having purchased multiple pounds of methamphetamine directly from Hecke himself. And, as in *Bradford* and *Hancock*, the CI's descriptions of his dealings with Hecke were quite detailed. The CI offered Hecke's street address, cell phone number, and vehicle details, as well as coded text messages regarding drug purchases that the CI deciphered for Detective Compton. The CI further admitted to purchasing varying quantities of methamphetamine from Hecke at certain prices and provided a specific description of how Hecke delivered the drugs: "vacuumed [sic] sealed, wrapped in black tape, covered with a red grease, then wrapped in cellophane." The "considerable detail" in these descriptions "bolsters [the CI's] credibility." *United States v. Taylor*, 471 F.3d 832, 839 (7th Cir. 2006). That the police independently corroborated the information through surveillance only reinforces this point. *See Bradford*, 905 F.3d at 504; *Hancock*, 844 F.3d at 709.

Urging a contrary result, Hecke likens this case to *Clark*, but the facts there are materially different from those here. In *Clark*, the informant "was the only source of information specifically about drug trafficking" yet lacked firsthand knowledge. Moreover, unlike here, there were no controlled buys, and corroboration by the police was weak. *Id*. at 564–66; *see also United States v. Woodfork*, 999 F.3d 511, 517 (7th Cir. 2021) (omission of informant's criminal history was not

material to the finding of probable cause where controlled-buy transactions made the informant's credibility less critical to the probable cause determination); *Glover*, 755 F.3d at 817–18 (*Franks* hearing required because the informant's tip was "minimally corroborated" and provided "little detail").

Furthermore, Detective Compton's affidavits were not devoid of information undermining the CI's credibility. On the contrary, the affidavits informed the judge that the CI had provided the information in question after being caught in illegal drug activity. Accordingly, we expect that the magistrate judge realized that the CI had a criminal history and assumed that he had struck a deal with law enforcement to obtain some leniency. *See Woodfork*, 999 F.3d at 517 ("We trust that warrant-issuing judges are aware that the individuals upon whom law enforcement relies to make drug purchases through controlled buys are likely to have criminal histories.").

For these reasons, even if the affidavits had contained the additional information about the CI's background, we do not think it would have altered the probable cause determination. Thus, the district court did not clearly err when denying Heke's request for a *Franks* hearing.[3]

---

[3] Although not necessary to our holding, we also note that Hecke offers neither "direct evidence of the affiant's state of mind or circumstantial evidence that the affiant had a subjective intent to deceive based on the nature of the omissions." *Glover*, 755 F.3d at 820. Hecke's failure to show that Detective Compton's omission was motivated by a deliberate or reckless disregard for the truth is another reason why his appeal on this issue fails. *See McMurtrey*, 704 F.3d at 511; *United States v. Schultz*, 586 F.3d 526, 531 (7th Cir. 2009) ("The standard is not whether the affidavit contains a false statement, but whether the affiant knew or should have known that a statement was false.").

**2**

Hecke also argues that evidence at trial uncovered purported falsehoods in Detective Compton's affidavits, which entitle him to a *Franks* hearing. First, he points to Detective Bryan Heine's testimony during trial that he had surveilled Hecke using a GPS tracking device on November 8, which would have been before the police had secured the warrant on November 12. Second, he argues that the affidavit misleadingly suggested that "two people had accused Hecke of dealing drugs" when in fact, it was only the CI who was the genesis of the investigation. Neither point is persuasive.

For starters, Hecke failed to preserve his first argument for appeal. Recall that, prior to trial, Hecke moved to suppress evidence stemming from the GPS tracker that was authorized by a state warrant—the same warrant that Hecke sought to quash based on purported deficiencies in Detective Compton's affidavit. After denying Hecke's motion to suppress (as well as his renewed motion on the first day of trial), the district court invited Hecke's counsel to alert it if counsel had a new basis for its motion. Though counsel objected to evidence throughout the trial based on the pretrial suppression motion, he never brought the issue of Detective Heine's trial testimony to the court's attention. "[T]rial evidence bearing on a district court's ruling on a motion to suppress" may not be considered where the defendant did not request the court to "reevaluate its prior ruling in light of trial evidence." *United States v. Howell*, 958 F.3d 589, 596 (7th Cir. 2020) (citing, *inter alia*, *United States v. Hicks*, 978 F.2d 722, 725 (D.C. Cir. 1992) ("when evidence presented only at trial casts doubt on what would otherwise be a correct pre-trial denial of a suppression motion," the parties should "bring alleged errors to the trial

court's attention by making a proper objection or filing a motion.")). Indeed, Hecke's counsel conceded this point during oral argument.

That said, because we will generally "construe waiver principles liberally in favor of the defendant," *United States v. Dridi*, 952 F.3d 893, 898 (7th Cir. 2020), we will treat Hecke's argument as forfeited rather than waived, permitting plain error review. *See United States v. Foy*, 50 F.4th 616, 625 (7th Cir. 2022). Under this rubric, Hecke must show that (1) there was an error; (2) the error was plain; and (3) the error affected his substantial rights. *See United States v. Hartleroad*, 73 F.4th 493, 501 (7th Cir. 2023) (citing *Rosales-Mireles v. United States*, 585 U.S. 129, 134 (2018)). If Hecke makes this showing, we will only correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id*. (quoting *Rosales-Mireles*, 585 U.S. at 135).

Hecke contends that Detective Heine's testimony that he had surveilled Hecke with a GPS device on November 8, when the state court did not issue its first GPS warrant until November 12, is "damning" because it "indicates that the police conducted a warrantless search of Hecke's vehicle" and "casts further doubt on Compton's candor." This is certainly one interpretation of Detective Heine's testimony, but the more likely one is that he simply mixed up his dates. When Heine was later asked whether the applicable warrant was in effect on November 8, the detective responded "yes" (even though the warrant was issued on November 12). From this, it appears that the detective confused November 8 with

November 12 when recalling the events at trial. This does not satisfy Hecke's substantial burden to show plain error.[4]

We also reject Hecke's contention that Detective Compton's affidavits "suggested that *two* people had accused Hecke of dealing drugs." To be sure, the affidavits initially stated that Detective Compton "began [the] investigation" after he "received information" about Hecke's drug activities, and the CI is introduced later in the narrative. But this—even under a generous reading—does not suggest that two different individuals provided information to Detective Compton. Nor would it have been clear error for the district court to deny Hecke a *Franks* hearing on this basis.

**B**

Hecke next contends that the government constructively amended Count 7, which accused him of having a firearm in furtherance of possessing drugs with the intent to distribute on January 13, 2020. Despite never having raised this argument before the district court, Hecke insists that his objection to the jury instruction on Count 7 preserved the constructive amendment argument for appeal, as the two arguments are "substantively similar." This is incorrect.

As his counsel acknowledged, Hecke's jury instruction objection "ha[d] to do with the doctrine of unanimity." Whether

---

[4] To the extent Hecke argues that police engaged in an unconstitutional warrantless search by tracking Hecke before the state warrant's issuance on November 12, that question was not raised before the district court and is not properly presented on appeal. *United States v. Payne*, 102 F.3d 289, 293 (7th Cir. 1996) ("We have repeatedly held that a party that fails to press an argument before the district court waives the right to present that argument on appeal.") (internal quotation marks omitted).

the government constructively amended Count 7 at trial is a fundamentally different question. Because Hecke "neither objected below to any relevant statement by the government nor raised the issue of constructive amendment to the indictment … we review only for plain error." *United States v. Phillips*, 745 F.3d 829, 831–32 (7th Cir. 2014).

The Fifth Amendment's Grand Jury Clause "limits the available bases for conviction to those contained in the indictment." *United States v. Pigee*, 197 F.3d 879, 886 (7th Cir. 1999) (internal quotation marks omitted). A constructive amendment occurs "when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." *United States v. Penaloza*, 648 F.3d 539, 546 (7th Cir. 2011) (internal quotation marks omitted).

As Hecke sees it, this is precisely what happened at his trial. Count 7 of the indictment alleged that Hecke's offense occurred on January 13, 2020, but, he argues, the district court impermissibly broadened the charge by (1) not specifying this date in its jury instructions and (2) allowing the government to present evidence that Hecke possessed firearms on a different date.

We start with the jury instructions. Although the instruction explaining the elements of Count 7 did not explicitly state that the offense must have occurred on January 13, 2020, it did state that the government had to prove beyond a reasonable doubt that Hecke had possessed a firearm in furtherance of the drug trafficking crime "as alleged in Count 6." And Count 6 charged Hecke with possession with intent to distribute methamphetamine or fentanyl on January 13, 2020. From this,

the jury would have had little trouble understanding that, to convict on Count 7, it must find that Hecke possessed a firearm on January 13.

Moving on, to prove Count 2, the government presented evidence at trial that Hecke sold methamphetamine on December 5 and had an Uzi firearm at the time. According to Hecke, the jury may have impermissibly relied on the December incident to convict him of Count 7. But when defense counsel referred to the December events while discussing Count 7 during closing argument, the government was careful to explain to the jury on rebuttal that it "didn't charge him with having a gun in the first buy or in the second buy." Rather, Count 7 was limited to the events of January 13. We see no indications that the government attempted to expand Count 7 beyond that date.[5]

In sum, because the challenged jury instruction and the government's representations at trial were "strictly confined to the charged offense," "[t]here was no constructive amendment of the indictment." *Penaloza*, 648 F.3d at 546. And, even if there were error, it was not so plain as to require vacating Hecke's conviction.

## C

Finally, Hecke challenges three enhancements the district court applied to determine his sentence: (1) the role in the

---

[5] Hecke also argues that the government constructively amended Count 7 by presenting evidence of firearms found at his stash house during the search on January 13. But that evidence would be relevant to whether Hecke had possessed those firearms to facilitate his distribution of methamphetamine on that same date.

offense enhancement under § 3B1.1(c); (2) the obstruction of justice enhancement under § 3C1.1; and (3) the credible threats of violence enhancement under § 2D1.1(b)(2). "To determine whether a Guidelines enhancement was correctly imposed, we review the district court's legal conclusions *de novo* and its factual findings for clear error." *United States v. Tate*, 97 F.4th 541, 549 (7th Cir. 2024) (internal quotation marks omitted). We will reverse the district court's application of the enhancements "only if we are left with a definite and firm conviction that a mistake has been made." *United States v. Beechler*, 68 F.4th 358, 368 (7th Cir. 2023) (internal quotation marks omitted).

**1**

Section 3B1.1 of the Sentencing Guidelines provides for a two-level enhancement if the defendant was "an organizer, leader, manager, or supervisor in any criminal activity," and the crime did not involve five or more participants and is not "otherwise extensive." U.S.S.G. § 3B1.1(c). Though the Guidelines do not explicitly define what constitutes an organizer, leader, manager, or supervisor, we have repeatedly observed that an organizer or leader must have "exercised some degree of control over others involved in the commission of the offense" or was "responsible for organizing others for the purpose of carrying out the crime." *United States v. Garcia*, 948 F.3d 789, 806 (7th Cir. 2020) (quoting *United States v. Wasz*, 450 F.3d 720, 730 (7th Cir. 2006) (collecting cases)). Our "practical, not formal" inquiry involves making a "commonsense judgment about the defendant's relative culpability given his status in the criminal hierarchy." *United States v. Lovies*, 16 F.4th 493, 506 (7th Cir. 2021) (internal quotation marks omitted).

Hecke believes that this enhancement is inapplicable because, as he sees it, he did not lead or supervise Battell at all. Rather, Hecke argues, he and Battell had a mere buyer-seller relationship. The record, however, reflects otherwise.

When asked at trial how he would describe his relationship with Hecke, Battell replied that Hecke would call him "his right hand man."[6] Battell also recounted how he would acquire vehicles, guns, and other merchandise for the cartel at Hecke's direction in exchange for credit on the amount he owed to Hecke. Moreover, Battell explained that Hecke sometimes gave him specific instructions, such as the vehicles needing to be able to pull trailers down to Mexico and the cartel's interest in only semi-automatic assault rifles, rifles, or handguns. Apparently pleased with Battell's work, Hecke texted Battell, "Appreciate all you do for me and the team." When asked about this text, Battell testified that Hecke was "giving praise for all the work I was doing for him. I was taking a lot off his plate so he could focus on other things."

On this record, the district court did not clearly err when finding that Hecke had "directed at least one other person" in the drug trafficking operation. *Beechler*, 68 F.4th at 369.

---

[6] Rather than looking to Battell's own testimony, the district court focused on a recording from the first controlled buy where Hecke told the CI that Battell was his "right hand man." We agree with Hecke that, in the recorded conversation, it is unclear whether he is talking about Battell's assistance with Hecke's illicit drug activities or his home improvement projects. But since the district court did not rely solely on this recording, Hecke's argument on this score "do[es] not overcome the bulk of the evidence showing he exercised some significant control and was responsible for some significant organization of [another]." *Garcia*, 948 F.3d at 807.

**2**

Section 3C1.1 requires a two-level enhancement if the district court finds that the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice." U.S.S.G. § 3C1.1. Obstruction under § 3C1.1 includes "threatening, intimidating, or otherwise unlawfully influencing a … witness … directly or indirectly, or attempting to do so." *Id*. cmt. n.4(A). As we have repeatedly recognized, a mere "attempt to influence a witness is enough, regardless of whether it succeeds." *United States v. Barber*, 937 F.3d 965, 972 (7th Cir. 2019) (citing *United States v. Wright*, 37 F.3d 358, 362 (7th Cir. 1994)).

In applying this enhancement, the district court relied on two messages Hecke sent to the CI from jail. The first message, dated April 27, 2020, read: "Hello ci 753. Whats up." The second, sent about an hour later, stated:

> My mandatory minimum is so high that [I] have to go to trial. That means you will have to testify RAT. Everyone one [sic] will see your face. You are a liar and a fuckin coward. I know you were looking at 15 to 20 year minimum. Guess what? You will have to do sometime [sic]. The feds let no one go. I hope to see you in prison. I want to personally thank you.

Citing these messages, the district court found that Hecke "had the specific intent to obstruct justice by influencing [the CI's] participation as a witness at trial."

Hecke's objection to the enhancement on appeal is predicated on the theory that the government had failed to prove that he was, in fact, the sender of the messages. But Hecke never questioned their provenance below. Instead, Hecke

relied on them to argue that the "communications from Hecke to [the CI] in April 2020" were not "designed with a specific intent to influence testimony." This is waiver. *See United States v. Aslan*, 644 F.3d 526, 552 (7th Cir. 2011) (holding that defendant "waived any objections to the reliability of the [evidence]" because he "affirmatively rel[ied] on [the evidence] himself" to present alternative arguments).[7]

**3**

Turning to the final issue, Section 2D1.1 imposes a two-level enhancement "[i]f the defendant used violence, made a credible threat to use violence, or directed the use of violence." U.S.S.G. § 2D1.1(b)(2). When applying this enhancement, the district court pointed to various text messages Hecke sent to third parties seemingly threatening that he would call in armed reinforcements from the Sinaloa cartel. For example, in one series of texts, Hecke said: "Please a [sic] beg you not to play with me …. If any problems come to my mothers [sic] house I will blame you." A few hours later, Hecke texted the same person: "I just heard you threatened my peeps[.] I may not be able to control them now[.] You have no idea what you got yourself into …. Calling south in two hours to get them prepared if necessary …. I am will [sic] to

---

[7] Even if we were to treat Hecke's argument as forfeited and review for plain error, our conclusion would be the same. The text messages indicate that they are "From: Hecke, Steven," and the first message correctly identified the CI by his number, 753. Moreover, Hecke did face a high mandatory minimum sentence, and the CI did testify at trial. The "provision of facts and details" and the "corroboration by or consistency with other evidence" here are sufficient to support the text messages' reliability for sentencing purposes. *United States v. Barker*, 80 F.4th 827, 834 (7th Cir. 2023).

die for my respect are you? They have all addresses …. I hope you have some big guns[.] They are vested up[.] And strapped up too."

The court also heard from a DEA agent, who explained that, based on his experience, the statements were threats (or could be perceived as such) and that the "south" may well be referring to the cartel. The agent further described the fear that the cartel instills in people, even in Fort Wayne, Indiana, due to "the long reach that [the people] believe cartels have."

Based on this evidence, the district court had "little trouble concluding" that Hecke credibly threatened violence in order "to invoke fear in the recipients and ensure their compliance." We find no error in this assessment.[8]

### III

For the reasons above, we AFFIRM the judgment of the district court in all respects.

---

[8] Hecke's sole argument on appeal—that any threats to be discerned from these text messages amount to nothing more than a domestic dispute—is unsupported by the record.